UNIVERSAL AUDIT CO. OF NEW YORK v. CAMERON.

(Supreme Court, Appellate Division, First Department.   November 19, 1915.)

1. CONTRACTS ⬅️328—SERVICES—ACTION FOR SHARE—PARTIAL DEFENSE.

In an action by an audit company having a working agreement with defendant for one year from April 15, 1911, whereby they were to share the money received on work in which defendant was engaged for the company, to recover its share on the employment of defendant from May 6, 1911, until October 22, 1912, it was a partial defense that the contract or agreement expired on April 15, 1912.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1571–1584; Dec. Dig. ⬅️328.]

2. CONTRACTS ⬅️94—SERVICES—ACTION FOR SHARE—DEFENSE—FRAUD.

In such action, an answer alleging that in December, 1910, before the making of the contract, the president of a committee visited plaintiff's office to find defendant and to engage him to conduct the investigation into the building of a courthouse, and that plaintiff then falsely represented that defendant was in its employ, and that if the committee would employ plaintiff it would assign the conduct of the work to defendant; that in reliance on such false representation, made to induce the committee to employ plaintiff and to defraud defendant out of the profits from the conduct of the investigation, the committee employed plaintiff; that plaintiff thereafter represented to defendant that it had been engaged to conduct the investigation, and so induced defendant to agree to supervise it at a per diem fee, which he would not have done, had he known of the fraud of plaintiff's representations to the committee; and that thereafter, on May 6, 1911, he was designated to conduct another county investigation, and, believing that his appointment had come from his retainer by plaintiff in the former investigation, and induced by the false and fraudulent representations of the plaintiff, he agreed to direct assistants furnished by plaintiff and to share the profits of the investigation according to the agreement, which he would not have done if the plaintiff's false representations had been known to him, and that when he first discovered them on September 30, 1911, he repudiated his agreement, and so notified plaintiff—stated a good defense, if proven, since the second investigation was part of the entire relation of plaintiff and defendant to each other.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. ⬅️94.]

3. SET-OFF AND COUNTERCLAIM ⬅️28—ACTION ON CONTRACT—CLAIM ARISING OUT OF CONTRACT.

In such action, defendant might set up by way of counterclaim the plaintiff's fraudulent representations to the chairman of the county investigating committee, but for which he would not have entered into an agreement with the committee, and would have made the profit on such investigation which the plaintiff made and received, since the counterclaim arose out of the contract or agreement upon which plaintiff was suing, so that it was proper to dispose of the controversy, including the counterclaim, in one suit.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 47, 48; Dec. Dig. ⬅️28.]

Scott, J., dissenting, and Ingraham, P. J., dissenting in part.

Appeal from Special Term, New York County.

Action by the Universal Audit Company of New York against James Cameron, with counterclaim by defendant.   From an interlocutory judgment, sustaining in part a demurrer to the amended answer, de-

fendant appeals. Reversed in part, and demurrer overruled, with leave to withdraw, and to reply to the counterclaims.

The opinion of Lehman, J., at Special Term, was as follows:

It appears from the complaint that the parties hereto entered into an agreement, evidenced by a letter dated April 15, 1911, whereby the defendant agreed that where his services are engaged by the plaintiff the plaintiff should pay him at a specified rate. This contract was to continue for one year from its date. Thereafter, and on May 6, 1911, the defendant was appointed by a court order in New Jersey to conduct the investigation of the affairs of the board of chosen freeholders of the County of Hudson. On May 12, 1911, the defendant wrote the plaintiff: "The attached order, dated May 6, 1911, of Francis J. Swayze, in the matter of the examination of the affairs of Hudson county, is a part of the work included in our working agreement of previous date, and is the same as if it had been given in the name of the Universal Audit Company. I shall myself see to it that the bills are presented at the conclusion of each month." Subsequently, and on or about September 30, 1912, the defendant notified the plaintiff that he would complete the investigation solely for his own benefit and account, and exclude the plaintiff from any part of the moneys to be paid therefor. The plaintiff has brought this action for its consequent damages, and the defendant as a partial defense has pleaded that the contract by its terms expired on April 15, 1912, and claims that at least from that date he was entitled to all the profits derived from the investigation.

It seems to me, even though the agreement of April 15, 1911, may not be an enforceable contract in the sense that plaintiff does not by its terms agree to employ the defendant upon any work, and the defendant does not agree to perform any work for the plaintiff, yet it constitutes what the defendant himself calls it, "a working agreement," which fixes the rate at which the defendant is to be paid for all work where the services of the defendant are engaged by the plaintiff. This working agreement was to expire within one year, and thereafter the defendant could certainly refuse to accept any engagement at that rate. Where, however, the engagement was made by the plaintiff and accepted by the defendant before the expiration of that contract for a piece of work entire in character, there should be no doubt but that the rate of pay was fixed by the working agreement, and the defendant could not after the expiration of the year claim the benefit of the engagement and at the same time repudiate the terms upon which the engagement was made. It appears from the complaint that, though the services of the defendant in the investigation of the affairs of Hudson county were made under an order placing this investigation in defendant's hand, it was agreed that this work was included in this working agreement "as if it had been given in the name of the Universal Audit Company." In other words, as between these parties the services rendered by the defendant were to be regarded as rendered by engagement of the plaintiff, and the defendant is entitled to pay for these services only at the rate fixed, and cannot claim that after April, 1912, he was entitled to retain all the profits of the work. · Demurrer to the partial defense must therefore be sustained.

The answer for a first defense alleges that in December, 1910, the president of the Hudson county courthouse investigation committee visited the plaintiff's office for the purpose of finding the defendant, whom the said committee desired to engage to conduct the investigation for it; that the plaintiff then falsely and fraudulently represented that the defendant was an employé of the plaintiff, and that if the said committee would employ the plaintiff the plaintiff would assign the defendant to supervise the work thereof. Relying upon said representations, the committee did employ the plaintiff to conduct the said investigation, and it would not have employed the plaintiff if it had known that the defendant was not an employé of the plaintiff, and that the plaintiff was not in a position to supervise the work of said investigation.

Thereafter the plaintiff represented to the defendant that it had received the appointment through political influence, and this representation was made for the purpose of inducing the defendant to enter into an agreement with it

to supervise the investigation. The defendant made such an agreement, relying upon the plaintiff's representations, and would not have made such an agreement if he had known of the plaintiff's false representations. Thereafter, and on or about the 6th day of May, 1911, the defendant was designated by Hon. Francis J. Swayze, a Justice of the Supreme Court of the state of New Jersey, to conduct an investigation into the affairs of Hudson county, N. J. The defendant had become acquainted with him during the supervision of said investigation, and the defendant believed and understood that said appointment had come to him by reason of his previous retainer by the plaintiff, and induced by and relying upon the plaintiff's previous false representation the defendant agreed that if the plaintiff would furnish him with competent assistants he would divide the profits of the said work with the plaintiff on the basis of the agreement of April 15, 1911, and thereafter defendant wrote to the plaintiff the letter dated May 12, 1911. The same facts are also pleaded in the eighth defense as a counterclaim. In my opinion these facts are insufficient, either as a defense or counterclaim.

The alleged misrepresentations of the plaintiff referred to were material upon the defendant's employment under the plaintiff's appointment to conduct the investigation for the committee. They apparently were not made to induce the subsequent general employment of April 15, 1911, and had no reference to the inclusion in that employment of the work to be performed by the defendant under his personal appointment by Justice Swayze. This suit is brought by reason of this subsequent contract and appointment. The defendant at that time knew that the appointment was made in his name, and there is no allegation that the plaintiff represented to him that he could not hold this appointment for his own benefit.

On the contrary, it would appear that the new contract was made upon a new and independent consideration. It is possible that the defendant might not have been willing to enter into any further agreement if he had known that the previous contracts were obtained by fraud; but it does not appear that the earlier representations were made to induce the further agreement, or that they had reference to any fact pertinent to the further agreement. At most the defendant may have supposed that his own appointment by Mr. Justice Swayze, being the result of his prior employment, gave the plaintiff some moral claim on the profits to be realized thereunder; but, even if this is so, it furnishes no ground for a rescission of the subsequent contract. It follows that the demurrers to the first and eighth defenses should be sustained.

The defendant also, pleads the earlier misrepresentations as counterclaims, seeking to obtain a return of the profits procured by the plaintiff from two previous appointments made by the investigation committee relying on the plaintiff's alleged misrepresentations. Conceding that these counterclaims set forth good independent causes of action, they do not seem to me to be connected with the plaintiff's cause of action. They are not actions in contract, but are based on fraud, and the fraud alleged refers, not to the contract of employment under which the plaintiff sues, but under earlier contract, and the issues to be litigated are entirely different.

There remains only the plaintiff's demurrer to the fourth defense. In that defense the defendant pleads that another investigation was included in the contract of employment sued upon, and that the plaintiff breached the agreement to furnish assistants for such investigation prior to the 30th day of September. Unless the contract was separable, and there is nothing before the court to allow it to determine that it was not entire, the breach alleged may well have relieved the defendant from any further obligation thereunder. It follows that the demurrers to the partial defense, the first defense, and the first, second, and third counterclaims should be sustained, and the demurrer to the fourth defense overruled.

Settle judgment.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Gerard Roberts, of New York City, for appellant.

Avery & Whiting, of New York City (Jay E. Whiting, of New York City, of counsel), for respondent.

CLARKE, J. On April 15, 1911, the defendant wrote to the plaintiff as follows:

"This letter will serve the purpose of evidencing our agreement:

"On my work, where the services of the writer, James Cameron, are engaged by and for the Universal Audit Company, he shall receive the following moneys: An amount equal to one-half of the fee charged by the Universal Audit Company for the said James Cameron, the minimum amount to be paid him shall be $25 per day and expenses outside of New York; and

"An amount equal to one-third of the gross profit on each and every person engaged upon such work as is assigned to the said James Cameron, or upon which he is engaged for the said Universal Audit Company.

"By gross profit is meant the difference (or remainder) between the amount charged for the services of each person and the salary paid to each person by the Universal Audit Company for such service, less incidental expense for car fare, which cannot be charged to client. The amounts payable under paragraph one (1) shall be paid monthly. The amounts payable under paragraph two (2) shall be paid when recovery and payment has been had by the Universal Audit Company from its clients upon whose work the said James Cameron is or has been engaged.

"This contract shall continue for one year from the date hereof.

"Yours very truly, James Cameron."

On May 6, 1911, Judge Swayze, having been requested by the board of chosen freeholders of the county of Hudson in the state of New Jersey to investigate the affairs of the county and having determined to make a summary investigation, appointed Cameron to prosecute such investigation. On May 12, 1911, Cameron wrote the general manager of the plaintiff:

"The attached order, dated May 6, 1911, of Francis J. Swayze, in the matter of the examination of the affairs of Hudson county, is a part of the work included in our working agreement of previous date, and is the same as if it had been given in the name of the Universal Audit Company. I shall myself see to it that the bills are presented at the conclusion of each month."

The complaint alleges that the defendant duly commenced and undertook the supervision, direction, and conduct of said investigation on or about the 15th day of May, 1911, and continued to supervise, direct, and conduct such investigation until October 22, 1912, at which last-mentioned date he concluded the same, and it alleges that, pursuant to the terms of said agreement expressed in the letter annexed, "A," from the said date of the commencement of such investigation to and including September 30, 1911, the plaintiff furnished and supplied to the defendant the assistants, materials, supplies, and other accessories necessary for the prosecution of such investigation, and supplied and paid out money requisite to that end, and that the defendant during said period rendered to the plaintiff weekly reports as to the progress of such investigation, and the number of hours that defendant and his said assistants were engaged for each week upon such investigation, and that during said period the defendant rendered monthly bills to the said county of Hudson for the value of the services performed by the defendant and his assistants for each month

thereof; that said bills were approved and paid in full by said county, and that the defendant duly accounted to the plaintiff for all moneys so received by him from said county of Hudson, and that the said moneys so received from the said county of Hudson were apportioned and divided between the plaintiff and the defendant in accordance with the terms and conditions expressed in said agreement, a copy of which is hereto attached as "A," and that the plaintiff duly paid to the defendant his proportionate share of such receipts; that on or about September 30, 1911, the defendant, in breach of the terms and conditions of said agreement expressed in said letter, notified the plaintiff that he would not further perform his said agreement with the plaintiff, and refused further to perform the same, and further notified the plaintiff that he would complete such investigation solely for his own benefit and account, and exclude the plaintiff from any part of the moneys to be paid therefor; that the defendant thereupon, and from said date, and wholly without cause, refused to further permit the plaintiff to furnish or provide the assistants necessary for the continued prosecution of such investigation, and thereafter continued and claimed that he was continuing such investigation for his own benefit and account, with assistants engaged by the defendant independently of the plaintiff, all in breach of the terms and condition of his said agreement with the plaintiff, and against the protest of the plaintiff; that he has received large sums of money during said period from September 30, 1911, to October 22, 1912, amounting in the aggregate to upwards of $33,500; and it sues for $12,000 as the proportionate share of the plaintiff in and to said moneys.

[1] The answer, in paragraph 7, for a partial defense to the cause of action alleged in the complaint, alleges that the contract between plaintiff and defendant alleged in the complaint, by virtue of which plaintiff claims, by its terms expired on April 15, 1912. The plaintiff demurred upon the ground that the same is insufficient on the face thereof to constitute a partial defense. The learned court sustained the demurrer to the partial defense upon the ground that, even though the agreement of April 15, 1911, may not be an enforceable contract in the sense that plaintiff does not by its terms agree to employ the defendant upon any work, and the defendant does not agree to perform any work for the plaintiff, yet it constituted "a working agreement," which fixed the rate at which the defendant is to be paid for all work where the services of the defendant are engaged by the plaintiff, and that where the engagement was made by the plaintiff and accepted by the defendant before the expiration of that contract for a piece of work entire in character, the rate of pay was fixed by the working agreement, and the defendant could not after the expiration of the year claim the benefit of the engagement and at the same time repudiate the terms upon which the engagement was made. In my opinion, whatever force and effect may be ascribed to the so-called working agreement, it was specifically limited in its efficacy to one year from the date thereof. Therefore, as I view it, the partial defense was good, and the demurrer thereto should have been overruled.

[2] The first defense sets up that in December, 1910, a number of

citizens of Hudson county organized a committee to investigate the building of the county courthouse, and that Pope, the president of the committee, visited the office of the plaintiff for the purpose of finding the defendant, whom the said committee desired to engage to conduct the said investigation, and that plaintiff represented that the defendant was in the employ of the plaintiff, and, if the said committee would employ the plaintiff to conduct the said investigation, plaintiff would assign the defendant to supervise the work, and that, relying upon the said representations and believing the same to be true, the said committee did employ the plaintiff to conduct the said investigation, and that the said representations were false and untrue, and were so known to the plaintiff, and were made for the purpose of inducing the said committee to employ the plaintiff, and for the purpose of defrauding the defendant from the profits to be made from the conduct of said investigation; that thereafter the plaintiff stated and represented to the defendant that it had received the appointment to make such investigation through the political influence of its general manager in the state of New Jersey; that plaintiff made said representation for the purpose of inducing the defendant to enter into an agreement with it to supervise said investigation at a per diem fee; that, relying upon the said representations and believing the same to be true, the defendant entered into an agreement with plaintiff to supervise said investigation at a per diem fee, which was agreed upon between plaintiff and defendant, and thereafter performed the work; that the said representations were false and untrue, and known to plaintiff to be so when made; that this defendant would not have entered into said agreement, and would not have supervised said investigation for plaintiff, if the said representation before described had not been made to him by the plaintiff, and if he had known of the fraud practiced upon him by the plaintiff in making to the said committee the false representations before described; that thereafter, on the 6th of May, 1911, the defendant was designated by Hon. Francis J. Swayze to conduct an investigation into the affairs of Hudson county; that the said justice had presided over the investigation into the building of the county courthouse before described, and the defendant had become acquainted with him during his supervision of said investigation; that defendant believed and understood that said appointment had come to him by reason of his retainer by the plaintiff as before described to supervise the work of the said investigation, and, being induced thereto by the false and fraudulent representation made to him by the plaintiff, the defendant agreed that, if the plaintiff would furnish him with competent assistants in such numbers and at such times as were necessary to the conduct of the said investigation, he would divide the profits of the said work with the plaintiff on the basis of the agreement of April 15, 1911; that the defendant would not have entered into said agreement, and would not have written the letter dated May 12, 1911, if the said false and fraudulent representations before described had not been made to him by the plaintiff, and if he had known of the fraud practiced upon him by the plaintiff in making to the said committee the false and fraudulent representations

before described; that just prior to September 30, 1911, the defendant learned of the false and fraudulent representations made to said committee as before described, and learned of the false and fraudulent representations made to defendant by plaintiff as before described, and for the first time discovered the fraud that had been practiced upon him by the plaintiff, and thereupon defendant repudiated his agreement with plaintiff, and refused further to perform the same, and so notified plaintiff. To this defense the plaintiff demurred, and the demurrer was sustained. The same facts were also pleaded in the eighth defense as a counterclaim.

It seems to me that these Hudson county investigations were so closely connected, one with the other, so ran into each other in propinquity of time and in natural sequence, that the original fraud, as alleged, of plaintiff, ran over into the Swayze appointment, and induced and brought about the letter of the defendant which is the sole basis of this action; that is to say, that, although having received a personal appointment, defendant regarded it as if it had been made to the plaintiff, and stated that he would act accordingly. He asserts that he was induced to do this by the fraudulent representations that had been made a short time previous thereto in regard to the investigation in the other affairs of Hudson county, namely, the courthouse, on which he and plaintiff were engaged; in other words, that it was a part and parcel of the entire relation of plaintiff and defendant to each other and to the investigation of the county affairs. I think defendant was justified in presenting that defense, and if he can sustain his claim of fraudulent representations, and that he was induced to make the contract thereby, that it is a good defense.

[3] For a sixth defense, and by way of counterclaim, he alleges the fraudulent representations made by the plaintiff to Pope, the chairman of the Hudson county courthouse investigation committee, and that if it had not been for such representations he would have entered into an agreement with the committee, and would have made the amount on said investigation which the plaintiff made and received as a profit thereon, amounting to the sum of $6,614.55, for which he sues. This was demurred to, and the demurrer was sustained. The court, speaking of this as well as the seventh defense and counterclaim, which was also demurred to, said:

"Conceding that these counterclaims set forth good independent causes of action, they do not seem to me to be connected with the plaintiff's cause of action. They are not actions in contract, but are based on fraud, and the fraud alleged refers, not to the contract of employment under which the plaintiff sues, but under earlier contract, and the issues to be litigated are entirely different."

It seems to me that all these transactions are so connected together as to permit the interposition of these counterclaims. What the defendant says is that the agreement sued on was induced by the prior fraud under which he first came into a working arrangement with the plaintiff when the courthouse committee went over to see it, find out where he was, and employ him, and that, by the fraudulent representations then made that he was in the employ of the company, all these

various arrangements under which he shared his profits and gains with the plaintiff ensued. It seems to me that they are all so connected that it is right and proper to dispose of the controversy between the parties growing out of the same transactions in one suit.

Therefore the parts of the interlocutory judgment appealed from should be reversed, as indicated, and the demurrer overruled, with costs to the appellant, with leave to the respondent, on payment thereof, to withdraw said demurrer and to reply to said counterclaims.

McLAUGHLIN and LAUGHLIN, JJ., concur. SCOTT, J., dissents, on opinion of LEHMAN, J., below.

INGRAHAM, P. J. I concur with my Brother CLARKE in overruling the demurrer to the partial defense set up in paragraph 7 of the answer, but I think the judgment should be affirmed, so far as it sustains the demurrer to the first defense, upon the ground that the facts alleged are not sufficient upon their face to justify a finding that the contract between the plaintiff and the defendant was induced by fraud. The original contract as expressed in the letter of April 15, 1911, was clearly valid, and there was no fraud which induced the defendant to execute it, and under which he acted during that year, and I can see no fraudulent misrepresentations which would justify the defendant in repudiating his letter of May 12, 1911, which recognized the services that he should render under the order by a Justice of the Supreme Court of the state of New Jersey, in the examination of the affairs of Hudson county. Both parties acted under that letter; the plaintiff performed its obligation, and during the period in which the contract of April 15, 1911, was in force, it seems to me, the defendant was bound by it. This consideration also applies to the counterclaim, the demurrer to which, I think, was also properly sustained.

My conclusion, therefore, is that the order appealed from should be reversed as to the partial defense, and should be affirmed so as to sustain the demurrer to the first defense and to the counterclaim.